```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Tina M. Tracy,                        :

      Plaintiff,               :

   v.                              :     Case No. 2:14-cv-1603

                                                :     JUDGE GREGORY L. FROST
Commissioner of Social Security,     Magistrate Judge Kemp
                                                :

      Defendant.

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Tina M. Tracy, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits. That application was filed on January 6, 2011, and alleged that Plaintiff became disabled on November 14, 2009.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on July 19, 2012, and, after remand from the Appeals Council, a second hearing on March 19, 2013. In a decision dated April 10, 2013, the ALJ denied benefits. That became the Commissioner's final decision on July 24, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on November 25, 2014. Plaintiff filed her statement of specific errors on December 24, 2014, to which the Commissioner responded on March 24, 2015. A reply brief was filed on April 7, 2015, and the case is now ready to decide.

### II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 45 years old at the time of the first administrative hearing and who has an eleventh grade education, testified as follows. Her testimony appears at pages 93-128 and

147-55 of the administrative record.

At the first hearing, Plaintiff testified that she last worked at a Ponderosa Steakhouse for six to eight months.  She was both a cook and a server.  She was terminated because she could not do the work any more.  Other jobs she held included manufacturing and warehouse work, which she did through a temporary service, and bartender and cook at an American Legion post.  She had also managed a gas station and convenience store and worked for her father as a tow truck dispatcher.

Medical conditions which prevented Plaintiff from working included fibromyalgia and chronic pain caused by arthritis.  She had problems with her hips, knees, back, neck, and shoulder.  She took various medications for the pain, and was also on medication for anxiety and depression.  It was difficult for her to do laundry or to fix meals.  Plaintiff thought she could lift ten pounds and stand for ten to twenty minutes.  Her grip was not strong but she could move her fingers.  She was able to bathe, help with dishes, and drive, but she had difficulty running the vacuum and could not walk the dog.  She watched television and visited with grandchildren as well, and she could read and do crossword puzzles.

At the second administrative hearing, Plaintiff added that she had worked in the delicatessen department at an IGA and also bartended at a restaurant.  No other significant testimony was taken from her at that hearing.

### III.  The Medical Records

The medical records in this case are found beginning on page 432 of the administrative record.  The pertinent records can be summarized as follows.

A number of diagnostic studies were done on May 31, 2006.  They showed mild cerebral atrophy consistent with a history of neonatal bilateral subdural hematomas, and mild disc bulging at

C6-7.  The lumbosacral and thoracic spine studies were within normal limits.  Dr. Camma, who read the studies, suggested that fibromyalgia might be present.  (Tr. 432-33).

Dr. Crapes was Plaintiff's treating physician.  The treatment notes in the file go back to 2009.  A note from February, 2009, shows a diagnosis of, among other things, chronic back pain and fibromyalgia.  Plaintiff was taking Vicodin and Ultram at that time.  A physical assessment form dated later that year showed that Plaintiff reported chronic neck pain as well and that her trapezius and the soft tissue of the upper back were tender.  By October, spinal arthritis and neuropathy were added to the assessments, and Flexeril had been added to Plaintiff's medications.  She was still working at that time.  The following year's notes show a new diagnosis of cervical myelopathy and the addition of Tramadol to Plaintiff's medications.  A note from June, 2010 reports pain in the back, shoulders, and legs which severely limited Plaintiff's activity.  Six months later muscle spasms on both sides of the spine were noted.  (Tr. 437-51).  Notes from 2011 include comments like "back, leg & arm pain all day every day" which were made worse by exertion (Tr. 583) and "chronic back and neck pain" rated as 5 on a 0-10 scale (Tr. 586).

Dr. Meyer performed a consultative psychological examination of Plaintiff on March 7, 2011.  Plaintiff reported that she was fired from her last job because her pain prevented her from performing the work properly.  She appeared irritable but was also tearful at times.  Her physical complaints included fibromyalgia, arthritis, and a deteriorating disc in her neck.  Dr. Meyer diagnosed both a cognitive disorder and a depressive disorder and rated Plaintiff's GAF at 55.  However, she rated Plaintiff's degree of impairment in various work areas as mild.  (Tr. 452-66).

Dr. Weaver was the consultative physical examiner, and he saw Plaintiff on March 10, 2011. Plaintiff reported severe low back pain which limited her to sitting, standing, and walking for only 20 minutes at a time. She also had constant pain in her left knee. On examination, she walked with a stiffened gait and a left limp. She could not sit or stand for more than ten minutes at a time. Her knee was not swollen but there was some ratchety inconsistency in muscle strength testing. Her knee was tender, and she showed constant involuntary muscle spasm in the lumbar area as well as diffuse tenderness to palpation. Dr. Weaver's provisional diagnoses included probable chronic lumbar strain/sprain and chronic left knee pain. He thought Plaintiff could not perform activities requiring sustained sitting, standing, walking, climbing, squatting, stooping, crouching, kneeling, crawling, or repetitive moderate to heavy lifting, but said she was capable of occasional light lifting and carrying. (Tr. 474-82).

Dr. Crapes completed a physical capacity evaluation form on April 13, 2012. She indicated Plaintiff could sit for 3 hours, and stand and walk for 2 hours each, in a workday, but no more than 20 minutes at a time. Her lifting was limited to ten pounds and she had restrictions on the use of her hands. She could climb steps occasionally but never bend, squat, crawl, or climb ladders. She would also be affected by work stress and would miss 5 or more days of work per month. (Tr. 588-89). Dr. Crapes also noted that Plaintiff's pain would significantly limit her ability to complete work tasks or work at production levels expected by most employers. (Tr. 590-92). Office notes from that year continue to demonstrate that Plaintiff suffered from symptoms such as a decreased range of motion, general stiffness, and constant back pain, and that she was limiting her activities accordingly.

-4-

In addition to the records provided by examining and treating source, state agency reviewers also expressed opinions about Plaintiff's functional capacity.  Dr. Hinzman, who had records through March 24, 2011, the date of his assessment, said that Plaintiff could do a limited range of light work but was limited to occasional climbing, balancing, bending, kneeling, crouching, and crawling.  He did not have a treating source opinion to review, and gave great weight to Dr. Weaver's opinion.  He also concluded that Plaintiff's report of symptoms was not fully credible based on her "ADLs" (activities of daily living) and her "Medication Treatment."  (Tr. 177-79).  Dr. Perencevich concurred in that assessment on June 2, 2011.  (Tr. 199-201).

### IV.  The Medical Testimony

Dr. Paul Gatens was called to testify as a medical expert at the first administrative hearing.  In his testimony, which begins at page 128 of the record, he said, first, that the records documented various conditions including mild bilateral brain atrophy possibly caused by subdural hematomas, degenerative joint disease, a history of bronchitis and fibromyalgia, infrequent migraine headaches, and a history of chest pain.  He did not think those impairments were severe enough to meet any of the requirements of the Listing of Impairments.

Dr. Gatens thought the most significant condition was the history of subdural hematomas, which affected balance and strength.  He thought Plaintiff should be able to lift ten pounds, could stand and walk for four to five hours total in a workday if she was able to change position every thirty minutes, and could sit for up to eight hours with position changes every sixty minutes.  He said she could not climb ropes, ladders, or scaffolds, and could occasionally crawl, crouch, and kneel.  Also, her medications could cause some problems with concentration, possibly up to 25% of the workday.

V.  The Vocational Testimony

Dr. Olsheski was the vocational expert who testified at the first administrative hearing.  His testimony begins at page 135 of the administrative record.

Dr. Olsheski first testified about Plaintiff's past work.  He said that the cook and waitress positions were both light and semiskilled, and that the warehouse job was medium and unskilled.  Bartender was a light, semiskilled position, and convenience store manager was light and skilled.

Dr. Olsheski was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level and who could occasionally perform most of the postural requirements of light work.  According to Dr. Olsheski, someone with those limitations could do Plaintiff's past jobs as a short-order cook, waitress, and retail manager.  If the person was as limited as Dr. Gatens testified, however, those jobs would be ruled out.  If the limitations included being off task for a quarter of the workday, no other jobs would be available.

Dr. John Finch provided vocational testimony at the second hearing, beginning at page 156 of the record.  He was asked about additional jobs which Plaintiff had identified, and said the deli worker was medium and semiskilled and the waitress/bartender job was light and semiskilled.  He said that her job at the gas station, which he described as gas station attendant, was also medium and semiskilled and that she had worked as a stocker and packer, which was medium and unskilled.

Dr. Finch agreed with Dr. Olsheski that Plaintiff could do some of her past work if she could do a reduced range of light work, and could not do any work if she were off task 25% of the time.  He also testified that if she were as limited as Dr. Crapes indicated, she could not work full-time.  Finally, he said

-6-

that mild impairments in various areas of mental functioning would not preclude unskilled work.

VI. The Administrative Law Judge's Decisions

The Administrative Law Judge's first decision appears at pages 219-28 of the administrative record. The findings in that decision will be summarized briefly to provide background for the Appeals Council's decision to remand the case for further proceedings.

In the first decision, the ALJ made these findings: that Plaintiff was insured through March 31, 2014; that she suffered from degenerative joint disease of the left knee, low back pain, and fibromyalgia with arm and shoulder pain; that none of these impairments met or equaled an impairment described in the Listing; that Plaintiff could do a full range of light work with occasional climbing of ramps, stairs, ladders, ropes, and scaffolds and occasional balancing, kneeling, crouching, or crawling; and that she could still work as a short-order cook, waitress, and retail manager.

The Appeals Council, in an order dated November 14, 2012, remanded the case to the ALJ on multiple grounds. They included the failure to evaluate Plaintiff's fibromyalgia under Social Security Ruling 12-2p; the need to be more precise about what Plaintiff's past relevant work consisted of; and the ALJ's action in adjourning the hearing without affording Plaintiff's counsel the chance to examine the vocational expert. (Tr. 233-36).

In the decision made after remand, (Tr. 15-31), the Administrative Law Judge did not change his findings as to Plaintiff's impairments or whether they were of sufficient severity to meet or equal the Listing. He then found that Plaintiff could perform light work, apparently without any restrictions. Because Plaintiff's past work as a waitress/bartender was a light job, he found that she could

perform her past relevant work and was therefore not disabled.

       VII.  <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred in his evaluation of the treating source opinion from Dr. Crapes; and (2) the ALJ's residual functional capacity finding - that Plaintiff could perform a full range of light work - is not supported by substantial evidence. These claims are evaluated under the following standard.

<u>Standard of Review.</u>  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" <u>Id</u>.  <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A. The Treating Source Opinion

The Court's analysis of this issue begins with a review of the ALJ's rationale for according less than controlling weight to the treating doctor's opinion. Here is what the ALJ said.

Before discussing Dr. Crapes' opinion, the ALJ assigned "significant weight" to Dr. Perencevich's assessment. He did so due to the expertise of that physician in disability matters, and said it was "not contradicted and is consistent with and well supported by the totality of the evidence as discussed more fully above." (Tr. 26). Consequently, the ALJ accepted and adopted that view of Plaintiff's physical capacity.

Turning to Dr. Crapes' opinion, the ALJ found that it was "inconsistent with the greater weight of the evidence." Id. The ALJ said he could not find in the record "any objective evidence to support the extreme limitations" described by Dr. Crapes. He mentioned these particulars from the record as supporting his conclusion: a 2006 spinal MRI that was within normal limits, an "unremarkable" x-ray of the left knee in 2011, and mostly normal examination findings reported by Dr. Weaver. He then attributed Dr. Crapes' opinion to Plaintiff's report of symptoms and noted that he had found her to be less than fully credible. Based on these factors, he gave Dr. Crapes' opinion "modest" weight - without saying to what extent he accepted her various findings - and then gave both "equal weight" and "significant weight" to Dr. Weaver's opinion. In his prior opinion, which he incorporated by reference into the later one, the ALJ construed Dr. Weaver's opinion to mean that Plaintiff could "essentially do light work" (Tr. 227) and he also gave Dr. Gatens' opinion about Plaintiff's physical capacity "slight weight" because it was, in the ALJ's view, based on Plaintiff's subjective complaints. (Tr. 226). As to psychological limitations, the ALJ rejected Dr. Crapes' assessment because it was "inconsistent with the greater weight of the medical evidence in this record," because Dr. Crapes is

not a mental health specialist, because she relied on Plaintiff's self-report of symptoms, and because "the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another." This was, in the ALJ's view, "more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case." (Tr. 28).

Plaintiff contends that this portion of the ALJ's decision is unsupported by the record and that it is not sufficiently-well articulated to satisfy the requirements of 20 C.F.R. §404.1527(c). In particular, she notes that the totality of the allegedly inconsistent physical evidence consists of old tests (the 2006 MRI) plus one normal knee x-ray and some unremarkable examination findings. No other conflicting evidence is described in the ALJ's opinion. She also argues that the rejection of Dr. Crapes' mental limitations is not explained by reference to any other evidence of record, and appears to have been based on the fact that Dr. Crapes is not a mental health specialist and the suspicion that she accepted without question Plaintiff's own report of psychological symptoms.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective

-10-

medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  <u>Cutlip v. Secretary of HHS</u>, 25 F.3d 284 (6th Cir. 1994).  No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision.  <u>Wilson v. Comm'r of Social Security</u>, 378 F.3d 541, 544 (6th Cir. 2004).

    Taking Plaintiff's arguments in reverse order, the Court agrees that the explanation provided by the ALJ concerning Dr. Crapes' evaluation of Plaintiff's mental capacity is too vague to satisfy the articulation requirement described in <u>Wilson</u> and other cases.  The general phrase that a treating source opinion is "inconsistent with the evidence" is not specific enough to allow either the Court or the Plaintiff to understand what evidence the ALJ is relying upon.  As this Court has said, such a "bare-bones rationale does not seem to satisfy <u>Wilson</u>'s articulation requirement because no details of these claimed inconsistencies were supplied."  <u>Mercer v. Comm'r of Social Security</u>, 2013 WL 3279260, *7 (S.D. Ohio June 27, 2013), <u>adopted and affirmed</u> 2014 WL 197874 (S.D. Ohio Jan. 15, 2014).  On the other hand, this may well be one of those cases referred to in <u>Wilson</u> where the articulation error is harmless; that can happen if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it ...."  <u>Wilson</u>, 378 F.3d at 547.  Here, the consultative examiner and the state agency reviewers found no severe mental impairment at all, and it does not appear that Dr. Crapes ever administered any test instruments or performed any specific evaluation of Plaintiff's mental functioning.  The Court does have some reservations, however,

-11-

about the ALJ's rejection of Dr. Crapes' statement that Plaintiff's pain would interfere with sustained work activity; that is something which Dr. Crapes was in a position to evaluate, and the ALJ does not specifically address that issue. The more general comments about accepting a patient's self-report of psychological symptoms and the suspicion that a treating source might shade his or her opinions to favor a patient are, on this record, too general to support the ALJ's decision. The Court need not make a final determination on this issue, however, because a remand is necessary to address other deficiencies in the administrative decision. On remand, the ALJ should take a closer look at the entirety of Dr. Crapes' mental functional capacity assessment and provide a more detailed rationale in support of whatever weight the ALJ decides to give it.

 Plaintiff's arguments on the physical capacity side are more compelling. The ALJ's citation to evidence conflicting with Dr. Crapes' evaluation is, as Plaintiff contends, either so sparse that it does not constitute substantial evidence, or so vague that it does not constitute a proper articulation of the reasons why the opinion was rejected. Given the number of treatment notes from Dr. Crapes and the length of the treating relationship, plus the fact that Plaintiff has been diagnosed with fibromyalgia, a disease for which standard objective tests like x-rays or MRIs are not particularly helpful in diagnosing, citing to a few bits of evidence while ignoring most of the other evidence of record is plainly insufficient. "An ALJ cannot simply 'pick and choose' evidence in the record 'relying on some and ignoring others, without offering some rationale for his decision.'" Vorhis-Deaton v. Comm'r of Social Security, 34 F.Supp. 3d 809, 817 n.8 (S.D. Ohio 2014), quoting Young v. Comm'r of Social Security, 351 F.Supp.2d 644, 649 (E.D. Mich. 2004).

 Further, it is simply not accurate to say that Dr. Crapes' opinion was inconsistent with all of the other evidence of

-12-

record.  It is unclear exactly how limited Dr. Weaver found Plaintiff to be, but he did indicate restrictions in many of the same areas as Dr. Crapes did.  Dr. Gatens testified very similarly, especially as it relates to some type of sit/stand option, and it is unusual for a testifying medical expert's opinion to be discounted on the grounds that he relied too much on the Plaintiff's report of symptoms; his job is to describe impairments and their limitations based on a review of the records, and it appears that Dr. Gatens did just that.  Further, the ALJ appears to have disregarded this admonition from <u>Blakley v. Comm'r of Social Security</u>, 581 F.3d 399, 406:

> These [treating] sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

Further, the ALJ appears to have disregarded even portions of the state agency reviewers' opinions, finding that Plaintiff had the capacity for a full range of light work despite a number of postural limitations identified in those opinions.  For all of these reasons, the Court finds that a remand is needed for a more thorough and evidence-based review of the medical opinion evidence, and particularly the opinion of Dr. Crapes.

    B. <u>The Residual Functional Capacity Finding</u>

  Plaintiff's second claimed error can be dealt with summarily.  Plaintiff argues that the ALJ failed to reflect, in his physical residual functional capacity finding, the limitations expressed by Drs. Hinzman and Perencevich.  The Commissioner appears to concede that the ALJ made this error, but asserts that in light of the vocational experts' testimony, which took these limitations into account when addressing the question of whether Plaintiff could do her past work, any error was

harmless.  In light of the remand for further evaluation of the medical evidence and of Plaintiff's residual functional capacity, the Court need not decide the extent to which this error was harmless.  On remand, the ALJ should include any limitations expressed in opinions he finds to be credible into his RFC determination.

## VIII   Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

## IX.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge